Argued and submitted February 19, 2013, affirmed April 2, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DANIEL JOSEPH WEBB,
*Defendant-Appellant.*

Grant County Circuit Court
1009290CR; A147650

324 P3d 522

Kristin A. Carveth, Deputy Public Defender, argued the cause for appellant. On the briefs were Peter Gartlan, Chief Defender, and Erin Snyder, Deputy Public Defender, Office of Public Defense Services.

Doug M. Petrina, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Schuman, Senior Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant appeals a judgment of conviction for one count of second-degree burglary (Count 3) and two counts of first-degree theft (Counts 2 and 5), arguing that the trial court erred in denying his motion for judgment of acquittal on the burglary conviction and in sentencing him as a repeat property offender on Count 5 under ORS 137.717. For the reasons explained herein, we affirm defendant's convictions and do not address his sentencing argument, because it has become moot.

In reviewing the denial of a motion for judgment of acquittal, we state the facts in the light most favorable to the state to determine whether a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989); *State v. Kirkland*, 241 Or App 40, 249 P3d 554 (2011).

On April 18, 2010, defendant and a companion broke into and stole a number of items from a tractor trailer owned and being used by the victim to store inventory for his military surplus retail business located in an adjacent building. That same day, defendant and his companion broke into and stole items from a U-Haul trailer owned by a different victim.

Defendant was charged with a number of offenses. He was ultimately convicted of two counts of first-degree theft (Counts 2 and 5), ORS 164.055, for the conduct involving theft from the U-Haul trailer, one count of second-degree burglary (Count 3), ORS 164.215, for the conduct involving the theft from the tractor trailer, and one count of unlawful entry of a motor vehicle (Count 6), ORS 164.272.

Defendant was sentenced on Counts 2 and 3 to two years of supervised probation. On Count 5, the court sentenced defendant to 13 months' imprisonment and one year of post-prison supervision under ORS 137.717, as a repeat property offender. On Count 6, the trial court sentenced defendant to 12 months in jail, with credit for time served, to run concurrently with Counts 2, 3, and 5.

A person commits the offense of second-degree burglary if the person "enters or remains unlawfully in a building

with intent to commit a crime therein." ORS 164.215. In addition to its "ordinary meaning," a "building," for purposes of ORS 164.215, is defined in ORS 164.205(1) to include "any booth, vehicle, boat, aircraft or other structure adapted * * * for carrying on business therein." The record shows that the tractor trailer that defendant broke into was used by the victim to store inventory and records for the victim's adjacent retail military surplus business. The trailer was approximately 25 feet in length and eight to nine feet wide and was parked next to the retail store. The trailer had been used by the victim for approximately 18 years and was insulated against moisture. The victim had paid $750 to have a mural painted on its side depicting men holding an American flag and the words "Army Surplus." The trailer contained approximately $15,000 in surplus and seasonal inventory, as well as business records and an inventory sheet. The victim testified that the inventory sheet hung on the wall of the trailer and that, as he removed inventory, he would mark the items off of the inventory sheet. And the trailer also contained a file cabinet in which the victim filed receipts.

In his first assignment of error, defendant contends that the trial court erred in denying his motion for a judgment of acquittal on the burglary charge, asserting that the state failed to put on sufficient evidence from which it could be found that the tractor trailer was a "building" within the definition provided by ORS 164.205(1).

Defendant acknowledges that the statutory definition of "building" includes vehicles or other structures "adapted * * * for carrying on business." ORS 164.205(1). He contends, however, that the tractor trailer involved in this case was used only for storage, and therefore was not "adapted * * * for carrying on business" within the meaning of ORS 164.205(1). Defendant refers to the Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 135, 143 (July 1970), and, in particular, its explanation that the definition of "building" is expansive so as to "include those structures and vehicles which typically contain human beings for extended periods of time." In defendant's view, that commentary reflects an intention that a vehicle or other structure is "adapted for * * * carrying on business therein" if it

is designed specifically for containing "human beings for extended periods of time," and there is an absence of evidence that the tractor trailer defendant entered was used for that purpose.

For additional support, defendant cites our opinion in *State v. Scott*, 38 Or App 465, 590 P2d 743 (1979), in which we cited the Commentary and held that the railroad boxcar involved in that case was not a "structure adapted for carrying on a business therein." *Id.* at 467-68. In *Scott*, we noted the Commentary's explanation that

> "the purpose of [the] expansive definition of building is 'to include those structures and vehicles which typically contain human beings for extended periods of time, in accordance with the original and basic rationale of the crime: protection against invasion of premises likely to terrorize occupants.'"

38 Or App at 467. Our opinion in *Scott* did not describe the facts of that case, other than to note that it involved the burglary of a railroad boxcar. *Id.* In overturning the defendant's conviction, we said that, although "[i]t is conceivable that a boxcar may be adapted" for carrying on a business, there was "no evidence that [the particular] boxcar * * * was so adapted or that it was anything other than a structure on wheels designed for storage of goods during their transportation." *Id.* at 467-68. In defendant's view, *Scott* stands for the proposition that a vehicle or other structure will be considered adapted for a business when it is designed not merely for storage but specifically to contain human beings for extended periods of time.

Defendant cites this court's opinion in *State v. Nollen*, 196 Or App 141, 100 P3d 788 (2004), as an example of an application of that principle. *Nollen* involved the theft of items from a St. Vincent de Paul semi-truck trailer that served as a donation drop-off site. *Id.* at 143. When filled, the trailer would be attached to a tractor and transported to a transfer station. *Id.* In upholding the defendant's burglary conviction, we explained that, by being detached from its tractor, by remaining in place for some period of time, by having stairs next to it, and by having permanent signs nearby advertising it as a donation collection station, the

trailer had been adapted from its ordinary use as a transportation vehicle to the business of collecting donated goods and redistributing them to needy persons. *Id* at 144.

In defendant's view, *Nollen* represents a correct application of the policy expressed in the Commentary, because the tractor trailer in *Nollen* included modifications that invited the public to its interior. In contrast, defendant contends, the trailer that defendant broke into did not include adaptations inviting public access and therefore was not a building. Respectfully, defendant places undue emphasis on a single fact. The court in *Nollen* focused on adaptations that converted the trailer from a container for transporting goods to a donation station for the business of St. Vincent de Paul. That there were stairs allowing the public to drop off donations was just one fact. *Id*. The point was that adaptations had been made to the trailer to transform it from a container used to transport items to a donation station. *Id*.

The undisputed facts in this case show that even greater adaptations had been made to the trailer here than to the trailer in *Nollen*. The trailer was not hooked to a tractor; it had been stationary for 18 years; and it was used for storage of inventory and business records, an integral component of the victim's retail business. Certainly, a modification that creates access to the public could be relevant in determining whether a vehicle or other structure has been adapted for carrying on a business, but it is not required or dispositive. Whether a vehicle or other structure has been adapted for carrying on a business will depend on the circumstances, including the nature of the business and the adaptations. In this case, the undisputed evidence requires the conclusion that, not only had the trailer been adapted to the victim's business purpose to store inventory and records, it was also used for that purpose. We conclude that the evidence is sufficient to support a finding that defendant unlawfully entered a "building," as that term is defined in ORS 164.205(1).

In his second assignment, citing *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and *State v. Mallory*, 213 Or App 392, 162 P3d 297 (2007),

*rev den*, 344 Or 110 (2008), defendant contends that, in treating defendant as a repeat property offender under ORS 137.717[1] in the calculation of defendant's presumptive sentence on the first-degree theft conviction (Count 5), the court erred in using Counts 2 and 3 as a part of defendant's criminal history without first having the jury (rather than the court) make a finding that those offenses arose out of separate criminal episodes. *See* OAR 213-004-0006(2); ORS 131.505(4); *State v. Burns*, 259 Or App 410, 314 P3d 288 (2013), *recons den*, 261 Or App 113 (2014); *State v. Yashin*, 199 Or App 511, 514, 112 P3d 331, *rev den*, 339 Or 407 (2005) (determination that convictions arose out of separate criminal episodes is based on a factual finding that the acts giving rise to the convictions were not part of "continuous and uninterrupted conduct that * * * is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a [single] criminal objective").

The state brings to our attention that this assignment of error is moot. At the time of oral argument, the parties agreed that, although defendant had been released from prison, the case was not moot because he was serving a 12-month post-prison supervision (PPS) term on Count 5. Later, the state informed the court that defendant had subsequently been convicted of two burglaries in Deschutes County, with a 36-month term of PPS imposed for each offense. When defendant is released from prison, all of his existing PPS terms will merge into a single term, and any sanction for a violation of PPS will be limited to the sanction for a single PPS term. *See* OAR 213-012-0040(1) ("If the offender has been sentenced to multiple terms of post-prison supervision, the terms of post-prison supervision shall be served as a single term[.]"); *id.* ("The maximum sanction for a post-prison supervision violation * * * shall be limited as provided by OAR 213-011-0004 for a single term of post-prison supervision."). Thus, upon his release from prison,

---

[1] Defendant has two prior convictions for first-degree theft that, together with the convictions on Counts 2 (first-degree theft) and 3 (second-degree burglary), constituted four "previous convictions" that brought defendant under the repeat property offender statute, ORS 137.717 (the presumptive sentence on a conviction of first-degree theft is 13 months' incarceration if the person has "[f]our or more previous convictions" of certain property crimes, including first-degree theft and second-degree burglary).

defendant will serve his new 36-month PPS term as a single 36-month term, and that term will subsume all of defendant's preexisting post-prison supervision terms, including the 12-month term imposed on Count 5 in this case. The challenged sentence does not affect when defendant's new 36-month PPS term will commence, and poses no risk of additional sanction. Consequently, a decision on defendant's second assignment would no longer have a practical effect and the claim is therefore moot.

Affirmed.